OPINION
 

 Per Curiam:
 

 Petitioner Edward Bennett seeks this court’s intervention in the proceedings below and challenges a district court decision finding that our opinion in
 
 McConnell
 
 v.
 
 State
 

 [1]
 

 provided the State with good cause to file an amended notice alleging additional aggravating circumstances pursuant to SCR 250(4)(d). He also asks this court to strike the aggravating circumstances contained within that notice.
 

 Our intervention in this matter by way of a writ of mandamus is warranted, and we grant Bennett’s petition. An opinion of this court does not establish good cause as contemplated by SCR 250(4)(d) to allow the State to file an amended notice alleging additional aggravating circumstances. The amended notice filed by the State against Bennett on this basis is invalid, and those newly alleged aggravators contained within it must be stricken.
 

 FACTS
 

 The State filed a notice of aggravating circumstances against Bennett over 17 years ago on July 7, 1988. He was subsequently convicted of first-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and attempted robbery with the use of a deadly weapon and sentenced to death. That sentence was later vacated during post-conviction proceedings, and a new penalty hearing was ordered.
 
 [2]
 
 Remaining from the State’s original prosecution were three aggravating circumstances: the murder created a great risk of death to more than one person pursuant to NRS 200.033(3), the murder was committed during a burglary pursuant to NRS 200.033(4), and the murder was committed during an attempted robbery pursuant to NRS 200.033(4).
 

 Before Bennett’s second penalty hearing, this court decided
 
 McConnell
 
 on December 29, 2004. In that opinion we held that the
 
 *805
 
 practice of convicting a defendant under a theory of first-degree felony murder and then predicating an aggravating circumstance pursuant to NRS 200.033(4) on that underlying felony to achieve a death sentence failed to satisfy constitutional requirements.
 
 [3]
 

 The following day, without mentioning the
 
 McConnell
 
 decision, Bennett filed a motion which argued that the aggravating circumstances based on the attempted robbery and the burglary were duplicative. The State opposed Bennett’s motion and on January 13, 2005, moved to file an amended notice alleging additional aggravating circumstances. Conceding in its motion that our opinion in
 
 McConnell
 
 “eliminated two of the aggravators originally found by a jury against this defendant (murder in the course of a burglary and murder in the course of a robbery),” the State sought to add three new ones: the murder was committed by a person who has been convicted of a felony involving the use or threat of violence pursuant to NRS 200.033(2), the murder was committed to avoid lawful arrest pursuant to NRS 200.033(5), and the murder was committed to receive money or anything of monetary value pursuant to NRS 200.033(6) — the pecuniary-gain aggravator.
 

 Bennett opposed the State’s motion to file the amended notice. The district court scheduled a hearing on the matter. Two days before the hearing, the State submitted to Bennett a notice of evidence in support of aggravating circumstances, realleging the aggravating circumstance based upon the burglary, as well as the new aggravators it sought to add.
 

 During the hearing Bennett’s counsel argued:
 

 Our position, of course, is that the
 
 McConnell
 
 decision simply corrected something that has been going on in our system for some time, and it’s not good cause to amend or to circumvent. It was, in fact, an effort to limit those persons who are death eligible.
 

 The district court later inquired, “You say it’s unfair for them to take two bites out of the apple.” Counsel replied, “Absolutely.” The Deputy District Attorney later countered:
 

 The Nevada Supreme Court has now said, hey, prosecutor, you can’t use a couple of aggravators that you relied upon the first time around. And we’re saying, because of that change, we’re allowed to go back and reexamine it, file a timely notice, which we did within fifteen days of the
 
 McConnell
 
 decision, saying we want to add these additional aggravators.
 

 Recognizing that the State had previously indicated that it would not be pursuing the aggravators based on the attempted robbery
 
 *806
 
 and the burglary, the district court granted Bennett’s motion, which argued that the aggravators were duplicative.
 
 [4]
 
 Yet the district court also found that the
 
 McConnell
 
 opinion provided the State with good cause pursuant to SCR 250(4)(d) to file an amended notice alleging additional aggravating circumstances. However, the State’s motion was only partially granted; the district court found that one of the newly alleged aggravators — that the murder was committed to avoid lawful arrest — was unsupported by the evidence. As a result, the district court struck two aggravating circumstances that were pending against Bennett prior to our opinion in
 
 McConnell
 
 and permitted the State to allege two new ones.
 

 This petition followed.
 

 DISCUSSION
 

 A writ of mandamus is an extraordinary remedy by this court “to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station or to control a manifest abuse of or arbitrary or capricious exercise of discretion’ ’
 
 [5]
 
 or to clarify “an important issue of law.”
 
 [6]
 
 The decision whether to issue a writ lies within this court’s discretion, where this court considers the interests of judicial economy and sound judicial administration.
 
 [7]
 
 However, a writ will not be issued by this court “where the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law.”
 
 [8]
 

 We conclude that this matter raises an important issue of law and that the interests of judicial economy and justice soundly militate in favor of. granting Bennett’s petition. Not only does the record before us indicate that several district courts are confronted with this very issue, but under the circumstances of this case, we conclude that allowing the penalty hearing to proceed on the invalidly al
 
 *807
 
 leged aggravating circumstances would not serve the interests of justice and would potentially result in a waste of resources for all concerned.
 

 Application of McConnell to Bennett’s case
 

 As a threshold matter, we first address inaccurate assertions by the State as to the impact of
 
 McConnell
 
 on Bennett’s case. Despite predicating this entire matter on its assertion before the district court that
 
 McConnell
 
 applies to Bennett’s case, the State has retreated from this initial position and has expressed shifting positions about whether the holding announced in
 
 McConnell
 
 even applies to Bennett’s case at all. As we explain below, it clearly does.
 

 In a footnote in its answer, the State asserts: “This Court’s opinion denying rehearing in
 
 McConnell . . .
 
 has since rendered the State’s action of removing the two felony-murder aggravators unnecessary since Defendant’s conviction has been final since 1990 and
 
 McConnell
 
 does not apply.” Although this court has not decided whether
 
 McConnell
 
 is to be given retroactive effect to final cases,
 
 [9]
 
 the State incorrectly asserts that Bennett’s case is final. A conviction becomes final when judgment has been entered, the availability of appeal has been exhausted, and a petition for cer-tiorari to the United States Supreme Court has been denied or the time for such a petition has expired.
 
 [10]
 
 This occurred in Bennett’s case in 1990.
 
 [11]
 
 But such “finality” is not necessarily absolute, and it was undone in Bennett’s case when he was granted post-conviction habeas relief, his death sentence was vacated, and a new penalty hearing was ordered. Because Bennett is awaiting a new penalty hearing, his conviction, at least in regard to his sentence, is clearly no longer final. Thus,
 
 McConnell
 
 applies to the penalty hearing to be conducted in this matter, and its retroactive application is simply not an issue.
 

 Moreover, the State later asserts in its answer that “there was no specific finding by the jury that Defendant was found guilty based solely on a felony murder theory.” The State maintains that it is therefore “unclear whether the felony murder aggravating circumstances [based] on burglary and robbery are in fact improper as to Defendant’s case.” The State’s assertion that it is “unclear” whether
 
 McConnell
 
 applies to Bennett’s case because there was no
 
 *808
 
 specific finding by the jury that Bennett was convicted based solely on a theory of felony murder is troubling.
 

 Bennett’s murder conviction need not have been based solely on felony murder for
 
 McConnell
 
 to apply. We held in
 
 McConnell
 
 that ‘ ‘in cases where the State bases a first-degree murder conviction in whole
 
 or part
 
 on felony murder, to seek a death sentence the State will have to prove an aggravator other than one based on the felony murder’s predicate felony.”
 
 [12]
 

 Moreover, the original indictment filed in Bennett’s case appears to charge first-degree murder on a felony-murder theory only. Notably, it does not allege that the murder was premeditated or deliberate. The murder count provides:
 

 COUNT
 
 77 — Murder With Use of a Deadly Weapon
 

 [Bennett] did then and there, without authority of law and with malice aforethought, willfully and feloniously kill MICHELLE MOORE, a human being, during the perpetration of a robbery and/or attempt robbery, by shooting at and into the body of the said MICHELLE MOORE with a deadly weapon, to-wit: a firearm, in the following manner, to-wit: each Defendant aiding and abetting each other by Defendants entering into a plan to commit robbery and thereafter Defendant EDWARD BENNETT directly shooting the said MICHELLE MOORE, Defendant JOSEPH N. BEESON acting as a lookout, each Defendant counseling and encouraging each other throughout, and accompanying each other to and away from the crime scene.
 

 This language belies the State’s suggestion that Bennett was not convicted based solely on a felony-murder theory. And the State has not provided this court with any documentation suggesting that premeditated and deliberate murder was ever charged.
 

 Thus, contrary to the State’s position, our holding in
 
 McConnell
 
 squarely applies to a case such as Bennett’s — he appears to have been convicted on a theory of felony murder, the aggravators originally alleged by the State were predicated on the burglary and attempted robbery underlying that felony murder, and his conviction is not final. We direct the State to a lengthy, but pertinent, portion of
 
 McConnell:
 

 We advise the State, therefore, that if it charges alternative theories of first-degree murder intending to seek a death sentence, jurors in the guilt phase should receive a special verdict
 
 *809
 
 form that allows them to indicate whether they find first-degree murder based on deliberation and premeditation, felony murder, or both. Without the return of such a form showing that the jury did not rely on felony murder to find first-degree murder, the State cannot use aggravators based on felonies which could support the felony murder.
 

 We further prohibit the State from selecting among multiple felonies that occur during “an indivisible course of conduct having one principal criminal purpose” and using one to establish felony murder and another to support an aggravating circumstance. For example, in a case like this one, the burglary could not be used to establish first-degree felony murder while the associated robbery was used as an aggravator to support a death sentence. The burglary and robbery both occurred in an indivisible course of conduct whose primary purpose was the murder . . . ,
 
 [13]
 

 Because our opinion in
 
 McConnell
 
 does apply to Bennett’s case, the two aggravators pursuant to NRS 200.033(4) that were predicated upon the attempted robbery and burglary giving rise to the felony murder were constitutionally infirm and properly stricken.
 

 Good cause pursuant to SCR 250(4) (d)
 

 We now address whether the issuance of
 
 McConnell
 
 provided the State with good cause pursuant to SCR 250(4)(d) to file an amended notice alleging additional aggravating circumstances. We conclude that it did not.
 

 SCR 250(4)(d) provides:
 

 Upon a showing of good cause,
 
 the district court may grant a motion to file a late notice of intent to seek the death penalty or of an amended notice alleging additional aggravating circumstances. The state must file the motion
 
 within 15 days after learning of the grounds
 
 for the notice or amended notice. If the court grants the motion, it shall also permit the defense to have a reasonable continuance to prepare to meet the allegations of the notice or amended notice. The court shall not permit the filing of an initial notice of intent to seek the death penalty later than 30 days before trial is set to commence.
 
 [14]
 

 (Emphases added.)
 

 
 *810
 
 The purpose of SCR 250(4)(d) is to protect a capital defendant’s due process rights to fair and adequate notice of aggravating circumstances, safeguard against any abuse of the system, and insert some predictability and timeliness into the process.
 
 [15]
 
 By requiring the State through SCR 250(4)(d) to file a motion to amend a notice of aggravating circumstances within 15 days of learning of the grounds for the amendment and only upon a showing of “good cause,” this court requires accountability and diligence by the State when deciding what aggravators to pursue in the first instance.
 

 SCR 250(4)(d) has two essential prongs. The first prong deals with timeliness — a motion seeking to file an amended notice must be filed within 15 days after the State learns of the grounds for it. Here, the State has contended that this court’s decision in
 
 McConnell
 
 is the basis for its motion to amend.
 
 McConnell
 
 was decided by this court on December 29, 2004. The State filed its motion exactly 15 days later, on January 13, 2005. Because
 
 McConnell
 
 provided the grounds that the State asserted in support of its motion, the motion was timely, and this prong was satisfied.
 

 It is the second, “good cause” prong of SCR 250(4)(d) that requires a more difficult analysis. Whether a fundamental change in death-penalty case law,
 
 i.e., McConnell,
 
 constitutes “good cause” under the facts of this case raises a narrow question with little persuasive on-point authority to answer it. We have previously addressed the good-cause provisions of SCR 250(4) in only one opinion,
 
 State v. District Court (Marshall),
 

 [16]
 

 which provides some, but not definitive, guidance.
 

 In
 
 Marshall,
 
 we recognized that the good-cause determination under SCR 250(4)(d) rested within the district court’s sound discretion.
 
 [17]
 
 We concluded that good cause under the rule was not predicated on a lack of prejudice to a defendant, meaning that good cause is not satisfied simply because a defendant would not suffer any prejudice from the filing of a late notice.
 
 [18]
 

 Although a definitive explanation of good cause was not set forth in that opinion, considerable weight was given to the district court’s finding that “ ‘[e] very thing that the State considered in this case before deciding to seek the death penalty was known to it prior to the arraignment in the district court.’ ”
 
 [19]
 
 We also set the
 
 *811
 
 ceiling and the floor of what may and may not constitute good cause under this rule. For example, we stated that good cause certainly contemplates the “discovery of formerly unknown evidence of aggravating circumstances.’
 
 [20]
 
 Yet good cause is not established due to “mere oversight on the part of a prosecutor.”
 
 [21]
 

 Here, the good-cause argument proffered by the State and predicated upon the
 
 McConnell
 
 opinion is not squarely akin to either of the examples contemplated by this court in
 
 Marshall.
 
 We conclude, however, that an opinion by this court in itself does not provide the State with good cause pursuant to SCR 250(4)(d) to file an amended notice alleging new aggravating circumstances against a defendant. This is true even when that opinion announces a fundamental departure from death-penalty precedent, as
 
 McConnell
 
 did. Good cause requires something more.
 

 Our view on this matter is only strengthened by the fact that the evidence upon which the State bases the newly alleged aggravators has existed since Bennett’s original prosecution in 1988. The State originally passed upon these aggravators, which it has recognized in its answer to Bennett’s petition were weaker than the ones it actually chose to pursue. That we issued the
 
 McConnell
 
 opinion does not now give the State cause to resurrect weaker aggravating circumstances it rejected nearly 17 years earlier.
 

 For these reasons, we conclude that the district court’s decision granting the State’s motion to file an amended notice alleging additional aggravating circumstances pursuant to NRS 200.033(2) and NRS 200.033(6) must be vacated. Because these two aggrava-tors are invalidly alleged and must be stricken, we do not reach the merits of Bennett’s substantive challenges to these aggravators.
 
 [22]
 

 A single aggravating circumstance remains — that the murder created a great risk of death to more than one person pursuant to NRS 200.033(3). We have previously affirmed the finding of this aggravator in Bennett’s case.
 
 [23]
 
 Our review reveals no facial deficiency warranting extraordinary intervention with respect to this aggravator at this time. If, after a second penalty hearing, the jury finds this aggravator and returns a sentence of death, any challenges that Bennett properly raises on direct appeal will be reviewed.
 

 
 *812
 

 CONCLUSION
 

 Our opinion in
 
 McConnell
 
 rendered invalid the two aggravators based upon NRS 200.033(4) that were remaining from Bennett’s original prosecution. That opinion did not, however, provide the State with good cause pursuant to SCR 250(4)(d) to file an amended notice alleging additional aggravating circumstances under the facts of this case. The amended notice filed by the State against Bennett on this basis is invalid, and those newly alleged ag-gravators contained within it must be stricken. We therefore grant Bennett’s petition. The clerk of this court shall issue a writ of mandamus directing the district court to vacate its order granting the State’s motion to file an amended notice and strike the newly added aggravating circumstances. We also vacate the stay imposed by our order of March 30, 2005.
 

 [1]
 

 120 Nev. 1043, 102 P.3d 606 (2004),
 
 reh’g denied, McConnell
 
 v.
 
 State (McConnell II),
 
 121 Nev. 25, 107 P.3d 1287 (2005).
 

 [2]
 

 State
 
 v.
 
 Bennett,
 
 119 Nev. 589, 81 P.3d 1 (2003);
 
 Bennett v. State,
 
 111 Nev. 1099, 901 P.2d 676 (1995);
 
 Bennett v. State (Bennett I),
 
 106 Nev. 135, 787 P.2d 797 (1990),
 
 overruled in part by Leslie
 
 v.
 
 Warden,
 
 118 Nev.
 
 773,
 
 59 P.3d 440 (2002).
 

 [3]
 

 McConnell,
 
 120 Nev. at 1069, 102 P.3d at 624.
 

 [4]
 

 To the extent that the district court considered either aggravator to be du-plicative, it erred. Robbery and burglary occurring in a single course of conduct can be validly alleged as separate aggravating circumstances.
 
 See McConnell,
 
 120 Nev. at 1070, 102 P.3d at 625. However, any error in the district court’s reasoning in this regard was harmless because those two aggrava-tors were nevertheless rendered invalid pursuant to our
 
 McConnell
 
 decision, as explained below.
 

 [5]
 

 State v. Dist. Ct. (Riker),
 
 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005);
 
 see
 
 Nev. Const, art. 6, § 4; NRS 34.160.
 

 [6]
 

 State
 
 v.
 
 Dist. Ct. (Jackson),
 
 121 Nev. 413, 415, 116 P.3d 834, 835 (2005);
 
 Smith v. District Court,
 
 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997).
 

 [7]
 

 Riker, 121 Nev. at 231, 112 P.3d at 1074.
 

 [8]
 

 Id.; see
 
 NRS 34.170.
 

 [9]
 

 See McConnell II,
 
 121 Nev. at 29, 107 P.3d at 1290.
 

 [10]
 

 Griffith v. Kentucky,
 
 479 U.S. 314, 321 n.6 (1987);
 
 see Richmond v. State,
 
 118 Nev. 924, 929, 59 P.3d 1249, 1252 (2002).
 

 [11]
 

 Bennett I,
 
 106 Nev. 135, 787 P.2d 797,
 
 cert. denied,
 
 498 U.S. 925 (1990).
 

 [12]
 

 120 Nev. at 1069, 102 P.3d at 624 (emphasis added).
 

 [13]
 

 Id.
 
 at 1069-70, 102 P.3d at 624-25 (footnote omitted).
 

 [14]
 

 See also
 
 SCR 250(4)(f) (providing that the State must file a notice summarizing the evidence in aggravation no later than 15 days before trial unless good cause is shown).
 

 [15]
 

 See State v. Dist. Ct. (Marshall),
 
 116 Nev. 953, 959, 11 P.3d 1209, 1212 (2000).
 

 [16]
 

 116 Nev. 953, 11 P.3d 1209.
 

 [17]
 

 Id.
 
 at 965, 11 P.3d at 1216.
 

 [18]
 

 Id.
 
 at 964, 967, 11 P.3d at 1215, 1217.
 

 [19]
 

 Id.
 
 at 964, 11 P.3d at 1215.
 

 [20]
 

 Id.
 
 at 966, 11 P.3d at 1217.
 

 [21]
 

 Id.
 

 [22]
 

 Because the pecuniary-gain and attempted robbery aggravating circumstances are based on the same underlying facts, Bennett contends that they are both equally prohibited by
 
 McConnell.
 
 We have concluded that we need not address the merits of the argument at this time.
 

 [23]
 

 See Bennett I,
 
 106 Nev. 135, 787 P.2d 797.