# IN THE SUPREME COURT OF THE STATE OF NEVADA

GREGORY NEAL LEONARD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62800

FILED

OCT 2 3 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from an order of the district court denying a postconviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Jennifer P. Togliatti, Judge.

*Overview*

Appellant Gregory Leonard was charged in 1995 with murdering Thomas Williams in November 1994 and Tony Antee in January 1995. Both victims were strangled. Williams' body was found in his apartment, which was located in the same complex where Leonard worked and lived. Antee's body was found under Leonard's bed. The two cases were prosecuted separately, but their procedural histories are intertwined. Leonard ultimately was represented by the same attorneys in both cases.

This appeal arises out of the Antee killing, for which Leonard was convicted of first-degree murder and robbery. A jury sentenced him to death for the murder conviction.[1] This court affirmed Leonard's convictions and death sentence on direct appeal. *Leonard v. State*, 117 Nev. 53, 17 P.3d 397 (2001). Leonard filed a timely postconviction petition for a writ of

---

[1]In the other case, Leonard similarly was convicted of the first-degree murder and robbery of Williams. The jury in that case also returned a death sentence for the murder. *Leonard v. State*, 114 Nev. 1196, 969 P.2d 288 (1998).

17-36152

habeas corpus, which the district court denied after conducting an evidentiary hearing. This appeal followed.

*McConnell error*

Leonard argues that the felony aggravating circumstance based on robbery is invalid under *McConnell v. State*, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004), because the State relied on that felony to prove first-degree felony murder. In *McConnell*, this court held that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated." 129 Nev. at 1069, 102 P.3d at 624. *McConnell* applies retroactively, *Bejarano v. State*, 122 Nev. 1066, 1078-79, 146 P.3d 265, 274 (2006), to "cases where the defendant was charged with alternative theories of first-degree murder and a special verdict form failed to specify which theory or theories the jury relied upon to convict," *id.* at 1079, 146 P.3d at 274.

For the killing of Antee, the State charged Leonard with first-degree murder under two theories: (1) that the murder was willful, deliberate, and premeditated and (2) that the murder was committed during the course and commission of a robbery. The jurors returned only a general verdict that did not indicate which theory or theories they relied upon to find him guilty of first-degree murder. By the time the Antee case went to verdict, Leonard had been separately convicted of murdering Williams. In sentencing Leonard to death for the Antee killing, the jury found two aggravating circumstances: (1) the murder was committed by a person who was convicted previously of another murder (Williams), and (2) the murder was committed while the person was engaged in the commission of or an attempt to commit a robbery. Because the jurors could have relied

exclusively on a felony-murder theory to find Leonard guilty of first-degree murder, *McConnell* applies here and invalidates the felony aggravating circumstance. *See Bejarano*, 122 Nev. at 1080, 146 P.3d at 275. Indeed, the State concedes as much on appeal.

When an aggravating circumstance is invalidated under *McConnell*, "a new penalty hearing is the appropriate remedy unless it is 'clear beyond a reasonable doubt that absent the invalid aggravator[ ] the jury still would have imposed a sentence of death.'" *State v. Harte*, 124 Nev. 969, 975, 194 P.3d 1263, 1267 (2008) (alteration in original) (quoting *Bejarano*, 122 Nev. at 1081, 146 P.3d at 275-76). Absent the invalid *McConnell* aggravating circumstance, only one aggravating circumstance remains: Leonard's prior murder conviction.

As one aggravating circumstance remains, the question is whether it is clear beyond a reasonable doubt that the jury would have imposed the death sentence absent the *McConnell* aggravating circumstance. *See Archanian v. State*, 122 Nev. 1019, 1040, 145 P.3d 1008, 1023 (2006); *Leslie v. Warden*, 118 Nev. 773, 783, 59 P.3d 440, 447 (2002). In answering that question, the focus is on the invalid aggravating circumstance's effect on the jurors' weighing of the aggravating and mitigating circumstances, because thereafter the jurors could consider evidence relevant to the invalid aggravating circumstance as "other matter" evidence in deciding on the sentence. *See Rippo v. State*, 122 Nev. 1086, 1093, 146 P.3d 279, 283-84 (2006). In that analysis, we focus on the valid aggravating circumstances and any mitigating circumstances found by the jury or supported by the trial record where it is unclear whether the jury found any mitigating circumstances. Although Leonard did not present any mitigating evidence at the penalty hearing, the jury was free to find

SUPREME COURT
OF
NEVADA

(O) 1947A

3

mitigating circumstances based on evidence presented at the guilt phase or other evidence at the penalty phase. The record does not indicate that the jurors found any mitigating circumstances. It is not reasonably probable that removing the *McConnell* aggravating circumstance would have altered the jury's weighing determination because the murder-conviction aggravating circumstance clearly was the more compelling of the two aggravating circumstances—Leonard had strangled and robbed another person in the apartment complex only a few months before he similarly murdered the victim in this case. We therefore conclude that the jury would have imposed a death sentence even without the invalid *McConnell* aggravator.

*Conflict of interest*

Leonard argues that the district court should have held a hearing to inquire into a conflict between his trial counsel after one of his attorneys, David Schieck, filed a motion to withdraw as counsel citing irreconcilable differences with co-counsel, Peter LaPorta. The law of the case doctrine bars this claim because Leonard argued on direct appeal that "the district court should have held a hearing to resolve a temporary conflict between Leonard's counsel and co-counsel," and this court concluded that "the existing record does not reveal any plain error that would warrant relief at this juncture." *Leonard*, 117 Nev. at 85, 17 P.3d at 417. "Under the law of the case doctrine, issues previously determined by this court on appeal may not be reargued as a basis for habeas relief." *Pellegrini v. State*, 117 Nev. 860, 888, 34 P.3d 519, 538 (2001). Moreover, the claim lacks merit. Schieck testified at the evidentiary hearing that his concerns about inadequate investigation and trial preparation, which formed the basis for his motion to withdraw, were alleviated by assurances from co-counsel, and

thus he withdrew his motion and decided to continue representing Leonard. Leonard cites no authority supporting the proposition that a district court has a duty to inquire into a conflict even after counsel avers that no conflict exists. Therefore, the district court did not err in denying this claim.

*Ineffective assistance of counsel*

Leonard argues that the district court erred in denying several claims of ineffective assistance of trial and appellate counsel. Under the two-part test established in *Strickland v. Washington*, a defendant must show that counsel's performance fell below an objective standard of reasonableness and prejudice in that there is a reasonable probability of a different outcome but for counsel's deficient performance. 466 U.S. 668, 687-88, 694 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting test in *Strickland*). As *Strickland* cautions, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. Accordingly, to afford counsel's performance the level of deference required by *Strickland*, we must "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Id.* The defendant must prove the "disputed factual issues underlying [the] ineffective-assistance claim by a preponderance of the evidence." *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). Generally, we afford deference to the district court's factual findings. *See Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

*Failure to strike amended notice of intent to seek death*

Leonard contends that trial counsel should have moved to strike as untimely the State's amended notice of intent to seek the death

penalty, which was filed on the first day of the third trial. He asserts that such a motion would have succeeded because the State could not have demonstrated good cause for the untimely notice as required by SCR 250, thus eliminating the aggravating circumstance that the State was attempting to add—his prior conviction for murdering Williams. The district court rejected this claim. Citing *Rogers v. State*, 101 Nev. 457, 466, 705 P.2d 664, 671 (1985), and emphasizing that the purpose of SCR 250 "is to afford capital defendants due process by ensuring that a Defendant is given adequate time to challenge an aggravator," the district court held that "[d]efendant's attorneys were not ineffective in failing to move to strike the State's Supplemental Notice of Additional Aggravating Circumstances because any motion would have been futile." We agree.

The State first filed a notice of intent to seek the death penalty in this case on March 28, 1995, well within the time afforded by the version of SCR 250 then in effect.[2] The original notice alleged four aggravating circumstances: (1) the murder was committed while Leonard was engaged in the commission or attempted commission of a burglary, (2) the murder was committed while Leonard was engaged in the commission or attempted commission of a robbery, (3) the murder was committed to receive money or something of monetary value, and (4) the murder involved torture and/or depravity of mind. The initial notice did not reference the Williams murder

_____

[2]At the time, the requirements for filing a notice of intent were set forth in SCR 250(II)(A)(3). *See also* NRS 175.552(3) (1995) ("The state may introduce evidence of additional aggravating circumstances as set forth in NRS 200.033, other than the aggravated nature of the offense itself, only if it has been disclosed to the defendant before the commencement of the penalty hearing."). The Rule has since been amended but a copy of the version in effect at the times relevant to this appeal is attached for ease of reference.

as an aggravating circumstance because Leonard had yet to be tried for and convicted of that murder. The parties confirmed on the record that if the first case to go to trial as between Antee and Williams resulted in a murder conviction, that conviction would be used as an aggravating circumstance in the case tried thereafter.

This case proceeded to trial first, in May 1997. But the trial resulted in a mistrial after the jury deadlocked 11-1. The State then proceeded to trial against Leonard for the Williams murder. In August 1997, the Williams jury found Leonard guilty of murder and sentenced him to death. This case was then set for retrial in December of 1997.

On November 6, 1997, the defense filed a motion in limine in this case. In its motion, the defense acknowledged that, "If Leonard should be convicted of first degree murder, the State will seek to introduce evidence of the prior [Williams] murder conviction," but argued that, even though the Williams murder conviction would be admissible at the Antee penalty hearing, the Antee jury should not have its sense of moral responsibility diluted by being told the Williams jury had already sentenced Leonard to death. A hearing on the motion followed on November 21, 1997, at which the State orally stated that it did not oppose, and the district court therefore granted, the motion in limine. At the conclusion of the hearing, the following exchange occurred between counsel for the State (Ms. Leen) and defense counsel (Mr. Schieck):

> Ms. Leen: With respect to the notice of intent to seek death penalty in this case I've told counsel off the record and I want to memorialize it on the record, we will be filing an amended notice of intent that adds as an aggravating circumstance the conviction the defendant has now sustained for murder in the death of Tom Williams. And the State will also be seeking to use the defendant's

SUPREME COURT
OF
NEVADA

(O) 1947A

7

> conviction of that murder for impeachment purposes should the defendant elect to testify in the trial in this matter.
>
> Mr. Schieck: We're on notice and we are obviously aware of those facts for quite some period of time.

The minutes for the November 21, 1997 hearing memorialized this exchange.

The second trial also resulted in a mistrial, so the matter was set for trial a third time, to begin December 7, 1998. That morning, the State filed an amended notice of intent to seek the death penalty. Addressing the court outside the presence of the jury, the parties acknowledged that the defense had an unresolved motion challenging the depravity/torture aggravator in the original SCR 250 notice and had also been negotiating with the State for the withdrawal of the burglary aggravator. The prosecutor represented to the court that the amended notice confirmed that the State had "agree[d] to withdraw what was previously the first aggravating circumstance that the murder was committed while [Leonard] was engaged in the commission of [or] an attempt to commit any burglary" and also to withdraw the torture/depravity of mind aggravating circumstance.[3] The prosecutor further explained that the State had "added the aggravator which counsel have been well aware of because they also represent the defendant in the other case in which he has been convicted of another murder, . . . that the murder was committed by a person who was previously convicted of another murder under NRS

---

[3]In 1990, this court had held that an aggravating circumstance under NRS 200.033(8) could not be based solely on depravity of mind. *See Robins v. State*, 106 Nev. 611, 627-30, 798 P.2d 558, 569-70 (1990). Here, the State had alleged torture as well, which distinguished *Robins*.

200.033(2)." In response, defense counsel advised: "Your Honor, we did have notice last year that they intended to file the amended [notice] and we have no objection to the filing of it at this time." Referencing the pending defense motion challenging the depravity/torture aggravator, defense counsel stated, "I believe that motion is now moot and we would ask that it be withdrawn because it challenged the depravity aggravator." Thus, two of the four original aggravators were dropped, one was added, and Leonard faced three aggravating circumstances at the penalty phase: (1) the murder was committed by someone who has been previously convicted of another murder; (2) the murder was committed during the commission of or attempt to commit a robbery; and (3) the murder was committed to receive money or something of monetary value.[4]

Leonard maintains that defense counsel was ineffective for agreeing on the record to the filing of the amended notice instead of moving to strike it under SCR 250(II)(A)(3), as not having been filed 15 days before trial. We disagree and affirm the district court's determination that counsel were not ineffective because such objection would have been futile. While it is true that the amended notice was filed the day of trial, not 15 days before trial, any objection by Leonard to the amended notice as late would have been inconsistent with, and an arguable breach of, the negotiations between the State and the defense respecting the final form the amended notice would take. Such objection would have risked loss of the gains Leonard made by the State agreeing to drop two of the four original aggravators. And, confronted with an objection, the State would have had only to file a written motion seeking permission to file the amended notice,

---

[4]The State dismissed the pecuniary-gain aggravating circumstance at the end of the penalty hearing.

citing as good cause the negotiations between the parties and Leonard's repeated confirmation, both on the record and in his written papers, that he knew and agreed to the notice being amended to add the Williams murder conviction to the notice. *See* SCR 250(II)(A)(3) (1993 version attached) (allowing the court "in its discretion" to grant a motion by the prosecutor seeking leave to file an amended notice closer than 15 days before trial on a showing of "good cause," "subject to the right of the defendant to seek a reasonable continuance").

Although a pre-SCR 250 case, the district court's reliance on *Rogers v. State*, 101 Nev. 457, 705 P.2d 664 (1985), is apt, because it was the only decision that provided guidance at the time. *Rogers* acknowledged that procedural due process drove the concern with providing notice of aggravating circumstances—the importance of giving the defense notice with adequate time to prepare to meet the aggravating circumstances. *See* 101 Nev. at 466-67, 705 P.2d at 671. This court determined that Rogers had adequate notice and time to prepare where the State filed its notice of intent to seek the death penalty over three months before trial, defense counsel had "actual knowledge" of the non-offense statutory aggravating circumstances (prior felony convictions involving violence) approximately two and one-half weeks before the penalty hearing, and the State filed the formal notice of those circumstances approximately one week before the penalty phase. *Id.* Given *Rogers* and the lack of any authority interpreting SCR 250(II)(A), we agree with the district court that objectively reasonable counsel could conclude that a challenge to the amended notice would be futile where counsel had actual knowledge of the prior-murder-conviction aggravating circumstance more than a year before the trial started and repeatedly confirmed on the record his understanding that the State would

include the aggravator in the amended notice all acknowledged was forthcoming.

Leonard places great emphasis on this court's subsequent decisions interpreting later versions of SCR 250: *State v. Second Judicial Dist. Court (Marshall)*, 116 Nev. 953, 967, 11 P.3d 1209, 1217 (2000), and *Bennett v. Eighth Judicial Dist. Court*, 121 Nev. 802, 811, 121 P.3d 605, 611 (2005). The first problem with Leonard's reliance on *Marshall* and *Bennett* is that his trial counsel did not have the benefit of those decisions. Second, and more fundamentally, neither decision suggests a basis for trial counsel to have succeeded in striking the prior-murder-conviction aggravator.

*Marshall* addressed whether the district court acted within its discretion in finding no good cause for the State to file late notices of intent to seek the death penalty against two defendants where the only reasons offered for the late filings were the prosecutor's workload, the complexity of the case, and the prosecutor's inadvertent oversight with respect to the deadline. 116 Nev. at 965-66, 11 P.3d at 1216-17. Focusing on the discretion afforded the district court, this court acknowledged that the district court "might have been within its discretion if it had allowed the late filings" but explained that did not mean that the district court "manifestly abused its discretion or acted arbitrarily or capriciously in *not* allowing the late filings." *Id.* at 966, 11 P.3d at 1216-17. In deciding that the district court did not manifestly abuse its discretion or act arbitrarily or capriciously, this court indicated that the State could not circumvent the good-cause requirement for filing a late notice of intent by showing that the defense was not prejudiced. *Id.* at 967, 11 P.3d at 1217. That observation is significant with respect to the initial notice of intent to seek the death penalty as that notice triggers a number of rights and procedures, including

those set forth in SCR 250. Unlike in *Marshall*, however, the State timely filed the initial notice in this case. *Marshall* also says nothing about actual knowledge, which is a significant consideration in this case where the parties acknowledged on the record more than a year before the third trial that the State would assert the prior-murder-conviction aggravating circumstance. To suggest that *Marshall* would have required the trial court to preclude the State from filing the amended notice with that aggravating circumstance not only puts form over substance, it ignores the district court's broad discretion, contrary to the holding in *Marshall*.

*Bennett* addressed whether the district court acted within its discretion when it found good cause to allow the State to file an amended notice of aggravating circumstances more than 15 days "after learning of the grounds" for the amendment, as provided in the version of SCR 250(4)(d) that had by then been adopted. 121 Nev. at 809, 121 P.3d at 610. In *Bennett*, the defendant had obtained relief from a death sentence through postconviction proceedings and faced a new penalty hearing. *Id.* at 804, 121 P.3d at 607. Following *McConnell*, Bennett successfully challenged two of the remaining aggravating circumstances. *Id.* at 804-05, 121 P.3d at 607. The State then sought to amend the notice of aggravating circumstances to include three additional aggravating circumstances, asserting that *McConnell* provided good cause for the amended notice. *Id.* at 805, 121 P.3d at 607. This court disagreed because the evidence supporting the additional aggravating circumstances had been available 17 years earlier, when the State first prosecuted Bennett and considered including them in the original notice but chose not to do so. *Id.* at 811, 121 P.3d at 611. "Good cause," we held, requires "something more" than a change in the law. *Id.*

SUPREME COURT
OF
NEVADA

(O) 1947A

12

Here, the State consistently asserted in both the Williams and Antee prosecutions that it would rely on a murder conviction in one as an aggravator in the other, depending on which produced the first conviction. Unlike *Marshall* and *Bennett*, the defense engaged in an ongoing dialog with the State as to the form the final notice would take, a negotiation that continued until the first day of the third trial. The omission of the other-murder-conviction aggravator was not the product of the State considering and rejecting it, then trying to revive it later, as in *Bennett*, but a change in the facts occasioned by Leonard's conviction in the Williams case. *Cf. Riker v. Eighth Judicial Dist. Court*, Docket No. 56590, 2010 WL 3554576 (Order Denying Petition, Sept. 9, 2010) (rejecting challenge to amended notice of intent filed after defendant obtained relief from death sentence in postconviction proceeding and distinguishing *Bennett* because added prior-murder-conviction aggravator was not available at the time of the original penalty hearing). These facts, coupled with Leonard's repeated acknowledgments on the record that he knew the State would be filing an amended notice to add the Williams conviction and had no objection, support that defense counsel was not ineffective in not moving to strike the amended notice filed the day of trial, not 15 days earlier. As written at the time this case went to trial, SCR 250 required amendment 15 days before trial, not 15 days after learning of a new aggravator, and gave the district court discretion to permit a late filing on motion within or even after that 15-day period. Had Leonard objected to the notice, the remedy lay in a motion to late file on the grounds the defense had breached its evident agreement to the amended notice, not an order striking the prior-murder-conviction aggravator while somehow holding the State to its agreement to drop the burglary and depravity/torture aggravators.

Leonard suggests that defense counsel should have objected even if the chance of success was small because success would have eliminated the only aggravating circumstance thus making Leonard ineligible for the death penalty. But hindsight has 20/20 vision. When the circumstances are viewed from counsel's perspective at the time, as we must do under *Strickland*, the defense was not provided the opportunity to eliminate the only aggravating circumstance. The State could have responded to a challenge to its amended notice by proceeding with the two aggravating circumstances that it agreed to withdraw and did not include in the amended notice. Leonard also faced the other aggravating circumstances that the State alleged in the original notice and retained in the amended notice. Although one of those aggravating circumstances was dismissed at the end of the penalty hearing, counsel did not have the benefit of that decision at the start of the trial and we cannot use hindsight in evaluating counsel's performance. Similarly, counsel could not be expected to have anticipated our decision in *McConnell*, which invalidated another of the other aggravating circumstances, as that decision announced a new rule, *Bejarano v. State*, 122 Nev. 1066, 1075-76, 146 P.3d 265, 272 (2006), that this court has described as "a fundamental departure from death-penalty precedent," *Bennett v. Eighth Judicial Dist. Court*, 121 Nev. 802, 811, 121 P.3d 605, 611 (2005). *See Doyle v. State*, 116 Nev. 148, 156, 995 P.2d 465, 470 (2000) ("The failure of counsel to anticipate a change in the law does not constitute ineffective assistance.").

Considering the circumstances in this case and the legal landscape at the time, we conclude that Leonard did not demonstrate deficient performance based on counsel's failure to challenge the amended notice of intent. Accordingly, we conclude that the district court did not err

in concluding that Leonard did not demonstrate ineffective assistance of counsel with respect to the amended notice of intent.

*Failure to file motion to suppress evidence of victim's body*

Leonard argues that trial counsel were ineffective for failing to file a motion to suppress evidence of the victim's body on the ground that the search of Leonard's apartment was conducted without his consent, a search warrant, or exigent circumstances. We decline to consider this argument. The opening brief does not support this claim with any argument or citation to authority, but instead refers to the argument in the supplemental brief filed in the district court in violation of NRAP 28(e)(2). In addition, Leonard's attempt to argue the merits of the claim for the first time in his reply brief is improper. NRAP 28(c) (providing that reply briefs "must be limited to answering any new matter set forth in the opposing brief"); *Elvik v. State*, 114 Nev. 883, 888, 965 P.2d 281, 284 (1998) (explaining that arguments made for the first time in a reply brief prevent the respondent from responding to appellant's contentions with specificity).

*Failure to conduct adequate pretrial investigation*

Leonard argues that trial counsel did not conduct an adequate investigation before the guilt phase of trial due to conflict about how counsel intended to conduct the investigation.[5] Although the record supports Leonard's assertion that there was considerable disagreement between trial counsel, Leonard fails to provide any specific factual allegations related to how any of counsel's quarrels or allegedly inadequate investigation affected the outcome of trial. Notably, many of Leonard's allegations relate to the

---

[5]Leonard also contends that counsel failed to investigate or present any mitigating evidence at sentencing. We address this claim later with Leonard's other penalty phase claims of ineffective assistance of counsel.

Williams case or the first or second trial in this case, neither of which resulted in a verdict, and do not directly pertain to counsel's performance at the third Antee trial that resulted in the judgment of conviction challenged in the underlying habeas petition. Therefore, the district court did not err in denying this claim.

*Failure to object to testimony about Leonard's voice*

Leonard argues that trial counsel were ineffective for failing to adequately object to, or alternatively, stipulate to Detective Mesinar's testimony that he recognized Leonard's voice on J. Cintron's pager. At trial, Detective Mesinar testified that he recognized Leonard's voice on the pager message as he, a homicide detective, had had three to four conversations with Leonard in the past two months. Leonard contends that this testimony was highly prejudicial as it implied that he was involved in another murder.

Given the potential for unfair prejudice if the jury heard that a homicide detective had multiple prior contacts and conversations with Leonard, counsel's acquiescence to the State's inquiry about how the homicide detective could recognize Leonard's voice may have been unreasonable. Even so, Leonard did not demonstrate prejudice. The testimony was vague at best with respect to why the detective had talked to Leonard multiple times before the Antee murder and did not explicitly identify Leonard as a suspect in another homicide. In contrast, the evidence of guilt presented at trial is strong. Leonard confessed to Cintron that he had killed a person and put the body under his bed, the victim's body was found under Leonard's bed, and Leonard had possession of the victim's pager. Therefore, Leonard failed to demonstrate that there was a reasonable probability of a different outcome at trial had the jury not heard this testimony.

SUPREME COURT
OF
NEVADA

(O) 1947A

16

*Failure to object to evidence about victim's pager*

Leonard argues that trial counsel were ineffective for failing to adequately object to V. Altamura's testimony and the limiting instruction about the conversation that he had with an unidentified caller who responded to a page to Antee. We conclude that Leonard failed to demonstrate deficient performance because trial counsel did object to the testimony on hearsay grounds. To the extent that Leonard claims that counsel should have objected to the limiting instruction, Leonard fails to explain on what basis counsel should have objected. Further, Leonard cannot demonstrate prejudice because any error was harmless. *Leonard,* 117 Nev. at 69-70, 17 P.3d at 408. Therefore, the district court did not err in denying this claim.

*Failure to object to evidence discovered with the victim's body*

Leonard contends that trial counsel should have objected to testimony about the presence of semen and a foreign pubic hair on the victim's body as it was irrelevant and improperly implied that Leonard had sexually assaulted the victim. We conclude that Leonard failed to meet his burden of demonstrating that trial counsel had no strategic reason for not objecting. *See Strickland,* 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Further, Leonard has failed to demonstrate that, had counsel objected, there would have been a reasonable probability of a different outcome at trial. As the victim was found in a state of undress, the analyst collected forensic evidence from his penis. The criminalist detected foreign pubic hair and the presence of semen, but was unable to determine the source of the hair or semen. This testimony was probative of the circumstances of the victim's murder. Even

Supreme Court
OF
Nevada

(O) 1947A

17

if the potential for unfair prejudice outweighed its probative value, given the overwhelming evidence of his guilt, Leonard has not shown a reasonable probability of a different result at trial had the criminalist not testified about the pubic hair and semen found on the victim.

*Failure to investigate and cross-examine Cintron*

Leonard contends that trial counsel did not adequately investigate and cross-examine Cintron about Cintron's criminal history involving dishonesty, his involvement in the murder, and whether Leonard threatened him. Leonard's arguments on appeal are brief and improperly refer to district court pleadings. Accordingly, we decline to consider his arguments. *See* NRAP 28(e)(2).

*Failure to object to testimony and prosecutorial misconduct*

Leonard argues that the district court erred in denying his claim that trial counsel was ineffective for failing to object to three instances of prosecutorial misconduct, improper testimony about prior consistent statements, and testimony about Leonard's invocation of his Fourth Amendment rights. He does not discuss any facts or legal authority, but rather improperly asks this court to review the issues in their entirety as set forth in his supplemental petition filed in the district court. *See id.* His failure to provide argument on these claims on appeal precludes review. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*Failure to investigate and present mitigating evidence*

Leonard contends that trial counsel did not adequately investigate mitigating evidence and failed to present any mitigating evidence at the penalty hearing. He argues that trial counsel should have

investigated and presented evidence of his abusive and dysfunctional childhood and family, his military service, his care for his ailing grandfather and his role as a father figure after his stepfather died, and his increasing alcohol and drug abuse before the murder.[6] He asserts that trial counsel's inadequate investigation of mitigating evidence undermined his decision to waive the presentation of mitigating evidence because he could not have waived his right to present evidence that was never discovered in the first place.

We conclude that the district court did not err in denying this claim. Because counsel could have reasonably surmised that the mitigation evidence from the five witnesses who were interviewed—Leonard's mother, half-siblings, ex-fiancée, and employer—sufficiently covered Leonard's childhood and background, it was not objectively unreasonable for counsel not to interview additional friends and family. *See Bobby v. Van Hook*, 558 U.S. 4, 11 (2009) ("[T]here comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative, and the search for it distractive from more important duties."); *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (stating counsel is not obligated "to scour the globe on the off chance something will turn up," and "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste"). Leonard further failed to demonstrate that the investigation of these witnesses would have altered his decision not to present testimony from friends and family members. At the outset of the

---

[6]Leonard provides brief summaries of the mitigating evidence that certain witnesses could have provided but asserts that he was unable to brief the entire issue due to page limitations, and he improperly refers this court to his full 53-page argument in his supplemental brief filed in the district court. *See* NRAP 28(e)(2).

SUPREME COURT
OF
NEVADA

(O) 1947A

19

penalty hearing, Leonard informed the court that he did not want six witnesses, who were friends and family and were prepared to testify, to testify at the penalty hearing to spare those witnesses emotional trauma. Therefore, he failed to demonstrate that it was likely that he would have permitted other friends and family members to offer mitigation evidence. Further, as the evidence that could have been offered by other potential witnesses had already been discovered by prior counsel, offered in another penalty hearing, or was otherwise cumulative of the evidence discovered while investigating his case, Leonard failed to demonstrate that investigation of these other friends and family members would have prompted him to permit them to offer mitigation evidence.

We further conclude that Leonard failed to demonstrate that trial counsel's performance was objectively unreasonable for failing to provide a social history to potential expert witnesses. Trial counsel provided Dr. Etcoff with Leonard's school records, military records, and the criminal records related to both the Williams and Antee murders. Dr. Etcoff's report was based on his review of those records, his four-hour clinical interview with Leonard, and his administration of intellectual functioning, psychological, and personality tests of Leonard.[7] Leonard complains that results of the psychological evaluation were based on Leonard's self-reporting of his background and childhood, which conflicted with the accounts from his family and friends. But Leonard never explains how a social history would have changed Dr. Etcoff's conclusion or analysis.

---

[7]Leonard also contends that trial counsel were ineffective for providing Dr. Etcoff's confidential report to the State. Leonard makes this claim in one conclusory sentence in his opening brief, but he then elaborates on the claim in his reply brief. Accordingly, we decline to address it. NRAP 28(c).

SUPREME COURT
OF
NEVADA

(O) 1947A

While Leonard claims that Dr. Saxon would have recommended hiring a substance abuse expert had she known about Leonard's social history, he fails to show that a comprehensive social history was necessary to make this decision, given that Dr. Saxon had Leonard's psychological report noting Leonard's drug and alcohol addictions. Thus, even if trial counsel's investigation was deficient, Leonard has not shown a reasonable probability that further investigation would have changed the outcome of the penalty hearing.[8] Even if Leonard would have allowed trial counsel to present all of the mitigating evidence through expert testimony, he did not demonstrate that there was a reasonable probability of a different result at trial. It is unlikely that the jury would have found that any of this mitigating evidence outweighed the aggravating circumstances or militated against imposing a sentence of death. The mitigating evidence shows that Leonard endured physical and emotional abuse as a child, that alcohol intoxication and drugs may have played a role in the murder, and that he would likely do well in jail. However, given the fact that Leonard had murdered another person in a similar manner only months before he

---

[8]Leonard also argues that trial counsel were ineffective for (1) waiving closing argument at the penalty hearing, and (2) failing to provide the jury with a list of mitigating circumstances. Leonard raises these claims as one-sentence arguments in his opening brief and then expands slightly on the claims in his reply brief. Aside from his failure to argue these claims adequately on appeal, they lack merit. Counsel's reasons for waiving closing argument and not providing a mitigation list to the jury were strategic and based on Leonard's waiver of the presentation of mitigating evidence. Also, as to counsel's failure to provide the jury with a list of mitigating circumstances, the district court instructed the jury on the mitigating circumstances identified in NRS 200.035 including the catchall of "[a]ny other mitigating circumstance."

committed the instant murder, he has failed to demonstrate a reasonable probability that he would not have been sentenced to death had trial counsel presented this mitigation evidence at the penalty hearing.[9]

*Lethal injection protocol*

Leonard contends that his death sentence is invalid because Nevada's lethal injection protocol violates constitutional prohibitions against cruel and unusual punishment.[10] This claim is not appropriately raised in a postconviction petition for a writ of habeas corpus because it does not challenge the validity of the sentence. *See McConnell v. State*, 125 Nev. 243, 249, 212 P.3d 307, 311 (2009). Although the district court incorrectly addressed this claim on the merits, we affirm the decision because it reaches the correct result. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970).

---

[9]Leonard also appears to argue that his waiver was invalid because it was not knowing and intelligent. He bases this argument solely on Schieck's assertion in his 2007 declaration that Leonard "was not personally canvassed about whether he still wished to waive the presentation of mitigation evidence after the State agreed not to cross-examine the witnesses." Leonard fails to demonstrate that the waiver was invalid on this basis.

[10]Leonard also contends that his death sentence is invalid because the jury was not instructed that it had to find that the aggravating circumstances outweighed the mitigating circumstances "beyond a reasonable doubt." This claim could have been raised on direct appeal and therefore was waived. NRS 34.810(1)(b)(2). And, in any event, this court has rejected the idea that the weighing determination is subject to the beyond-a-reasonable-doubt standard. *Nunnery v. State*, 127 Nev. 749, 770-76, 263 P.3d 235, 250-53 (2011).

*Brady violation*

Leonard asserts that the prosecutor misrepresented her involvement in Cintron's pending criminal charges and failed to turn over several pieces of evidence related to Cintron, which could have been used to impeach him, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Leonard contends that the prosecutor failed to disclose the following benefits received by Cintron: (1) help with his pending child support matter and with paying grocery and utility bills; (2) dismissal of a criminal forfeiture charge; (3) intervention by the district attorney's office in his criminal case for malicious destruction of property, by way of preventing his probation from being revoked and getting continuances for him to pay his fine; and (4) favorable treatment on charges of drug possession and annoying a minor, and dismissal of a charge of providing false information to a police officer.

A promise made by the prosecution to a key witness in exchange for the witness's testimony constitutes impeachment evidence that must be disclosed under *Brady*. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). To establish a *Brady* violation, Leonard must show that: the evidence at issue is favorable to the accused; the evidence was withheld by the State, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material. *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (citing *Strickler v. Greene*, 527 U.S. 263 (1999)).

We conclude that Leonard failed to demonstrate that the State violated *Brady*. Leonard provided no citations to the record or documentation in the appendix evidencing his claim that the district attorney aided Cintron in paying child support, utility bills, or buying groceries. Leonard's assertions that the State treated Cintron favorably in

his pending cases are speculative as his claims essentially presume that any action by the State in those cases benefitted Cintron.[11] Further, even if this new information were sufficient to show that the State failed to disclose all impeachment evidence, Leonard has failed to demonstrate that the benefits received by Cintron were material and would have changed the outcome of his case. Notably, as this court observed on direct appeal, Cintron voluntarily went to the police station to report Leonard's message and conversation, without any guarantee of payment or benefit. *Id.* at 71-72, 17 P.3d at 409. His trial testimony was consistent with the statements that he gave to the police at that time, and there was no evidence that any assistance that he received was contingent on his agreement to testify. *See Bell v. Bell*, 512 F.3d 223, 233-34 (6th Cir. 2008); *Middleton v. Roper*, 455 F.3d 838, 854 (8th Cir. 2006). The State's assistance "to Cintron where he had difficulties with the law that arose well after Cintron's initial disclosures to police in this case" had limited value as impeachment evidence. *Leonard*, 117 Nev. at 71, 17 P.3d at 408-09. Therefore, the district court did not err in denying this claim.

*Drafting of order*

Leonard argues that this court should reverse and remand because the district court did not make any express findings in orally

---

[11]It appears that trial counsel were aware of some of this information and unsuccessfully sought to use it to impeach Cintron. *See Leonard*, 117 Nev. at 71, 17 P.3d at 409 (discussing claim that trial court improperly excluded impeachment evidence, including that Cintron was released from jail after intervention by the district attorney's office in a prior case and that the district attorney's office intervened on Cintron's behalf on two occasions so that Cintron would have additional time to pay a fine).

announcing that it was denying the petition and did not provide any guidance to the State in drafting the order.

The record shows that, after holding several evidentiary hearings and allowing the parties to argue the claims, the district court announced that it had drafted 13 pages of its written order but did not have time to complete it and asked the State to do so. The record does not reflect that the district court otherwise explained its reasons for denying the petition on the record. In fact, counsel had to inquire whether the district court was denying the petition, to which the district court merely replied, "Correct," without any explanation. Although the district court's failure to announce its findings or provide guidance to the State in drafting the order is troubling, it does not warrant automatic reversal. The district court's order is sufficiently detailed as to allow this court to review the bases of the district court's decision, and Leonard has had the opportunity in this appeal to challenge any factual or legal errors in the written order.

Having concluded that Leonard is not entitled to relief, we ORDER the judgment of the district court AFFIRMED.[12]

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Pickering

_____, J.
Parraguirre

---

[12]The Honorables Michael Cherry, Chief Justice, and Michael Douglas, Justice, voluntarily recused themselves from participation in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

25

STIGLICH, J., dissenting:

I dissent from the majority's conclusion that counsel was not deficient for failing to file a motion to strike the amended notice of intent to seek the death penalty.

At the time of Leonard's trial, SCR 250 required a notice of additional aggravating circumstances be filed no less than 15 days before trial, and the trial court could permit an untimely notice only if the State demonstrated good cause for the delay. Despite this rule, the prosecutor waited until the first day of the third trial to file an amended notice adding a prior murder conviction as an aggravating circumstance. The record reveals no grounds on which the State would have been able to demonstrate good cause for the untimely filing; in fact, the record indicates that the State would have been unable to do so given that the prosecutor had announced her intent to add the aggravating circumstance over a year before Leonard's third trial.[13] Therefore, had counsel objected to the untimely notice, the trial court would have had to deny the State leave to file the additional aggravating circumstance of the prior murder conviction pursuant to SCR 250. Without the murder aggravator, Leonard faced only a single robbery aggravating circumstance that is now invalid and must be stricken under *McConnell*. Leonard has therefore established by a preponderance of the evidence that, by failing to object to the untimely notice, counsel was deficient, satisfying the first prong of the *Strickland* analysis.

_____

[13]Indeed, when the State announced its intent to add the prior murder aggravator it did so 10 days before Leonard's *second* trial. The State did not file an amended notice before the second trial.

SUPREME COURT
OF
NEVADA

(O) 1947A

26

The majority nevertheless concludes that it was reasonable for counsel not to object to the untimely addition of the murder-conviction aggravating circumstance. This conclusion is premised on the majority's assumption that there was an agreement or negotiation between the prosecutor and the defense as to the contents of the amended notice of intent to seek the death penalty, which made it reasonable for defense counsel not to object to the untimely filing and which also would have served as good cause to excuse the untimely filing had counsel objected to it. This assumption, however, is not supported by the record.

At no time did the prosecutor or the defense indicate that the withdrawal of other aggravating circumstances was predicated on the addition of the murder-conviction aggravator. In fact, the opposite is true: the prosecutor explained that she was withdrawing the burglary and torture/depravity aggravators because she was concerned that those aggravators were not supported by sufficient evidence or law.[14] Noticeably, neither party suggested that they had agreed to the withdrawal of the burglary and torture/depravity of mind aggravators or to the addition of the murder-conviction aggravator as part of a negotiation. Furthermore, the fact that defense counsel filed a motion in limine challenging the validity of

---

[14]As to the burglary aggravator, the prosecutor explained, "In this case, the defendant, it is the State's theory, committed the murder in his own apartment and the State would withdraw the aggravator in that regard." As to the torture/depravity of mind aggravator, the prosecutor opined, "While the State could still argue this [aggravator], the statute has changed to strike depravity of the mind under the new aggravating circumstances and the State would not proceed under this theory."

SUPREME COURT
OF
NEVADA

(O) 1947A

an aggravating circumstance and then moved to dismiss the motion as moot when that aggravating circumstance was voluntarily withdrawn by the State does not reflect any negotiation but merely demonstrates that defense counsel was advocating for his client and successfully litigated the motion.

If there truly were an agreement between the State and the defense regarding the untimely notice, certainly the subject would have come up during the postconviction proceedings below. But throughout the postconviction proceedings, the State argued solely that any motion would have been futile given defense counsel's actual notice of the murder conviction well before the third trial. At no time did the State argue that there was a negotiation between the defense and the prosecutor or otherwise elicit any testimony in this regard during the evidentiary hearing. It was not until oral argument in this court that the State first suggested an agreement existed between the prosecutor and defense counsel. The State's assertion at oral argument is not evidence, and the on-the-record discussion on the first day of trial does not evince a negotiation over the amended notice. Because evidence of a negotiation was never developed during the evidentiary hearing on the matter and is contradicted by defense counsel's affidavit,[15] we should not entertain this as a basis for finding counsel's performance to be reasonable. This court has a well-established practice of declining to consider arguments made for the first time on appeal and I see no reason why we should cast aside that practice in this case.

---

[15]Defense counsel stated in his affidavit that there was no strategic reason for failing to object to the untimely notice.

The majority also concludes that any objection would have been futile because the trial court would have allowed the State to file the untimely notice based on the pre-SCR 250 decision, *Rogers v. State*, 101 Nev. 457, 705 P.2d 664 (1985), which allowed the untimely filing of a new aggravating circumstance where the defendant had actual notice and was not prejudiced by the addition of it. This conclusion, however, completely ignores the fact that SCR 250 had been in place for at least five years before the State sought to file its untimely amended notice and that the plain language of SCR 250 clearly requires the prosecutor to show *good cause*, not actual notice or a lack of prejudice to the defendant, in order to file an amended notice. In fact, this court has repeatedly rejected the notion that good cause under SCR 250 may be established by showing lack of prejudice. *Bennett v. Eighth Judicial Dist. Court*, 121 Nev. 802, 810, 121 P.3d 605, 611 (2005) ("[G]ood cause is not satisfied simply because a defendant would not suffer any prejudice from the filing of a late notice."); *State v. Second Judicial Dist. Court (Marshall)*, 116 Nev. 953, 967, 11 P.3d 1209, 1217 (2000) ("[N]othing in the rule suggests that lack of prejudice to the defendant can supplant the express requirement of a showing of good cause before the district court may grant a motion to file a late notice of intent to seek death.").

As this court has made clear, SCR 250 is not simply a notice rule designed merely to encapsulate the holding of *Rogers*. Rather, SCR 250 was promulgated out of a recognition that "death is different" and death penalty cases require more procedural safeguards and consistency. *See Bennett*, 121 Nev. at 810, 121 P.3d at 610 (explaining that the purpose of SCR 250's notice provision "is to protect a capital defendant's due process rights to fair and adequate notice of aggravating circumstances, safeguard

SUPREME COURT
OF
NEVADA

(O) 1947A

29

against any abuse of the system, and insert some predictability and timeliness into the process"). At the time of Leonard's trial, there was a procedure in place for adding aggravating circumstances that had been approved by this court. This procedure required the prosecutor to demonstrate good cause if he or she wished to add an aggravating circumstance less than 15 days before trial. In fact, this procedure was deemed so important that it was later amended to require that a new aggravating circumstance be added within 15 days of *learning of the grounds* for the circumstance, not merely 15 days before trial. I cannot see how it would have been justifiable for the trial court to ignore a Supreme Court rule that was intended to ensure the fairness and integrity of death penalty proceedings, simply because the text of the rule, which is clear on its face, had not yet been discussed in a published opinion. Nor is it conceivable that an attorney might be deemed reasonable for ignoring an important procedural rule that would have had the effect of striking the most serious aggravating circumstance.

Finally, the majority concludes that it was not unreasonable of trial counsel to allow the State to file an amended notice of intent that alleged only three aggravating circumstances in order to avoid having to defend against the four aggravating circumstances alleged in the initial notice of intent. While the majority correctly points out that counsel should not have been required to anticipate our decision in *McConnell*, we do not need to view counsel's performance in hindsight to conclude that it was deficient. Instead, if we compare the aggravating circumstances from the initial notice to those in the amended notice, it is clear that the amended notice did not actually benefit the defendant. Of the four initial aggravators, two (burglary and torture/depravity of mind) were withdrawn

due to insufficient evidence and the other two (murder being committed for a monetary value and robbery) merged into a single aggravating circumstance. Because the State would have been able to proceed with only the robbery aggravating circumstance under the initial notice, it was objectively unreasonable for counsel to allow the State to add the murder-conviction aggravator, which was obviously the most damaging aggravator Leonard could have faced. None of the reasons offered by the majority justifies counsel's failure to invoke the unambiguous protections of SCR 250. Accordingly, I dissent on this ineffective-assistance claim and would hold that counsel's failure to challenge the amended notice of intent and strike the murder-conviction aggravating circumstance constitutes deficient performance.

This is not the end of the inquiry. To succeed on an ineffective-assistance claim, the defendant must also show prejudice—i.e., a reasonable probability of a different outcome of the proceedings. Here, the jury found Leonard to be death eligible based on two aggravating circumstances—the prior murder conviction and the robbery. But had counsel moved to strike the untimely amended notice, the jury would have been presented with only the single aggravating circumstance of robbery. It is clear that the murder-conviction aggravator was the weightiest of the two and was the only aggravator that added new facts at the penalty phase. Comparatively, the robbery aggravator was weak and involved the circumstances of the murder, which the jury already learned about during the guilt phase. This court has routinely recognized that aggravating circumstances which are based on the circumstances of the murder itself tend to carry less weight than other aggravating circumstances. *See, e.g., Rippo v. State*, 122 Nev. 1086, 1093, 146 P.3d 279, 284 (2006) (recognizing that "three invalid felony

aggravators all involved the circumstances of the murder itself, so striking them eliminates the weight of roughly one major aggravator"); *State v. Haberstroh*, 119 Nev. 173, 184, 69 P.3d 676, 683-84 (2003) (same). Considering the significance of the murder-conviction aggravator, I am not convinced that the jury would have sentenced Leonard to death based solely on the robbery aggravator. Therefore, I conclude that Leonard has shown a reasonable probability of a different outcome at the penalty phase but for counsel's deficient performance.

Moreover, in considering whether Leonard has demonstrated prejudice, we do not need to consider his ineffective-assistance claim in a vacuum; instead we should evaluate it in conjunction with the *McConnell* issue. *See, e.g., Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) ("When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed."); *Suggs v. State*, 923 So. 2d 419, 441 (Fla. 2005) (stating that the court "considers the cumulative effect of evidentiary errors and ineffective assistance claims together"). Counsel had a duty to object to the untimely amended notice based on SCR 250 and, had he done so, the prior murder conviction would not have been presented to the jury as an aggravating circumstance. And as the majority concedes, the robbery aggravator also should never have been presented to the jury and must now be stricken, pursuant to *McConnell*. Thus, the combination of counsel's error and the invalid robbery aggravator has resulted in Leonard being on death row despite not having any valid aggravating circumstances. We cannot blind ourselves to all of the relevant circumstances by considering each claim in isolation. To review these claims independently and ignore the cumulative prejudice would result in a manifest injustice. Under the unique

circumstances of this case, where the murder-conviction aggravator would have been stricken but for counsel's deficient performance and the only other aggravator is invalid as a matter of law, Leonard is entitled to relief from his death sentence. Accordingly, I dissent.

_____, J.
Stiglich

cc:    Hon. Jennifer P. Togliatti, District Judge
       Christopher R. Oram
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

Attachment

## II. Pretrial Proceedings

### A. FIRST PROCEEDING

At the arraignment, or as soon thereafter as possible, the court shall confer with the prosecuting attorney and defense counsel. The defendant shall be present during the hearing. The hearing shall be reported.

The following matters shall be concluded, if possible, during the first hearing:

1. **Determination to seek death penalty.** If a determination has been made, the prosecuting attorney shall state whether the state intends to seek the death penalty. If the prosecuting attorney announces that the state intends to seek the death penalty, the prosecutor shall also state all of the aggravating circumstances which the state intends to introduce during the penalty phase of the case. If the prosecuting attorney does not seek the death penalty, or later abandons seeking the death penalty, thereafter these procedures are not applicable.

If the prosecuting attorney has not reached a decision on whether the state will seek the death penalty, but wants to reserve the right to seek the death penalty, these procedures shall be applicable until such time as the prosecutor informs the court that the death penalty will not be sought.

2. **Requirement of notice.** If, after arraignment, the prosecuting attorney decides to seek the death penalty, or to present additional aggravating circumstances, the prosecutor shall file a Notice of Intent to Seek Death Penalty or, if applicable, a Notice of Additional Aggravating Circumstances, and shall list in the notice all aggravating circumstances which the prosecutor will attempt to present during the penalty phase of the case.

3. **Time limits.** Absent good cause shown, the prosecuting attorney may not file a Notice of Intent to Seek the Death Penalty or a Notice of Additional Aggravating Circumstances less than fifteen (15) days prior to the date set for commencement of trial. If the prosecuting attorney desires to file either notice less than fifteen (15) days prior to trial, the prosecutor must file a written motion seeking leave of the court to do so. Said motion must demonstrate good cause sufficient to excuse the prosecuting attorney from not filing the relevant notice within the time limit set forth above. The granting or denial of said motion shall be at the discretion of the court, subject to the right of the defendant to seek a reasonable continuance.

### B. MOTION HEARING

At an appropriate time consistent with the court's calendar, the court shall conduct a motion hearing. The defendant shall be present and shall be represented by counsel.

The following matters shall be concluded during the motion hearing:

1. All motions previously filed shall be heard.

2. The court shall confer with defense counsel and the prosecuting attorney for the purpose of hearing, then and there, or scheduling a hearing or hearings on, any other issues the state or defense wishes to present.

3. The court reporter shall be advised that all pretrial proceedings and hearings must be transcribed at least five (5) calendar days prior to the hearing set forth in III(A) except as to motions heard and decided within such five (5) day period, in which case the transcription shall be completed prior to trial.